IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANTILLES CEMENT CORP.,

    Plaintiff,

    v.                             CIVIL NO. 06-1567 (RLA)

AALBORG PORTLAND A/S,

    Defendant.

**ORDER DISMISSING THE COMPLAINT**
**BASED ON FORUM SELECTION CLAUSE**

Plaintiff, ANTILLES CEMENT CORP. ("ANTILLES"), instituted this suit under the Puerto Rico Dealer's Act of June 24, 1964, P.R. Laws Ann. tit. 10, §§ 278-278d (1997) (commonly known as "Law 75") alleging that defendant, AALBORG PORTLAND A/S ("AALBORG"), impaired and eventually terminated the existing contract between them without just cause. Plaintiff seeks damages as provided for in the Dealer's Act.

This action was initially brought in the Puerto Rico local court and subsequently removed to this forum. Defendant has petitioned dismissal of the complaint pursuant to the terms of the forum selection clause contained in the parties' contract which designated the courts of England to dispose of the controversies arising thereunder. ANTILLES opposed the request arguing that the commercial relationship between the parties is covered by Law 75 and that under the circumstances present in this case the aforementioned clause should be disregarded.

The Court having reviewed the arguments as well as the evidence submitted in the respective motions hereby finds that enforcement of the parties' choice of forum is warranted.[1]

### BACKGROUND

ANTILLES contracted with AALBORG for the purchase of certain quantities of grey Portland Cement in bulk to be dispatched from defendant's production plant in Denmark. The agreement specified the amount of cement to be sold and shipped to Puerto Rico by defendant on a monthly basis. The merchandise was to be loaded onto vessels chartered by plaintiff and destined for discharge in San Juan, Puerto Rico. ANTILLES contracted a shipping company for the transportation of the product to Puerto Rico based on a minimum tonnage per trip with built-in penalties in the event that the cargo did not reach the amount of weight agreed upon.

The contract with AALBORG became effective in January 2000 and was expected to last through December 2006. However, the termination date was subsequently moved forward to December 2005.

After having executed two contracts with forum selection clauses mandating arbitration in England the parties to this action signed an Addendum providing that contractual differences would be solved by English courts. The pertinent clause reads as follows: "Any conflicts arising out of or in connection with [the] Contract... which shall

---

[1] Given our ruling, there is no need to address the controversy regarding the applicability of Law 75 to generic products raised in this case.

not be settled amicably, shall be finally settled by the courts of England."

Commencing September 2005, AALBORG failed to meet the agreed-upon product quotas. In October 2005, defendant notified ANTILLES that it could not comply with the quantities of cement previously contracted purportedly because of a machinery breakdown.[2] As a result thereof, plaintiff claims it was forced to pay a $104,000.00 penalty to the shipper as well as expend in excess of $745,000.00 in purchasing cement from other sources in order to meet its clients' demands.

The following summarizes the quantities of cement (in metric tons) that AALBORG was required to sell pursuant to the contract terms versus those actually shipped; the applicable penalties triggered by the deficiency as well as the claimed added cement costs paid by ANTILLES to other suppliers:

| Date  | Contract | Shipped | Penalty      | Bought | Added Price  |
|-------|----------|---------|--------------|--------|--------------|
| 9/05  | 21,000   | 16,000  | $104,000.00  |        |              |
| 10/05 | 0        |         |              | 25,000 | $312,000.00  |
| 11/05 | 42,000   |         |              | 26,250 | $328,125.00  |
| 12/05 | 42,000   |         |              | 8,474  | $105,452.00  |

---

[2] ANTILLES disputes defendant's alleged unforeseeable inability to comply. In support thereof, it points to AALBORG's "Quarterly Report on Operations at December 31, 2005", which indicated that defendant "operated regularly throughout the year, in line with that programmed" and that during the last three months of the year "the cement sector at Aalborg Portland recorded a slight improvement."

**CIVIL NO. 06-1567 (RLA)**                                              **Page 4**

**FORUM SELECTION CLAUSE**

Motions to dismiss based on forum selection clauses are considered under Rule 12(b)(6) Fed. R. Civ. P. for failure to state a claim. Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 387 (1st Cir. 2001).

Parties to a contract frequently select in advance a particular location for adjudication of any disputes that may subsequently arise in their relationship. Their choice of forum, however, is not conclusive. Depending on the particular circumstances at hand, enforcement of a forum selection clause will be evaluated either under the standards developed under M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)[3] or under the transfer of venue provisions of 28 U.S.C. § 1404(a).[4]

In cases where the parties' choice of forum lies in a foreign jurisdiction or in a state court, implementation of the contractual

---

[3] In Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing, Inc., 128 D.P.R. 842, 857 (1991) the Puerto Rico Supreme Court, borrowing from Bremen, adopted the following criteria for validating forum selection clauses: (1) whether the selected forum is unreasonable or unfair; (2) trying the case in the selected forum would result in a clear and patent inequity or unreasonable or unfair; (3) the clause was negotiated through fraud or deceit and (4) implementing it would defeat the state's public policy.

[4] 28 U.S.C. § 1404(a) reads:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

preferences will be guided by the criteria set forth in Bremen. On the other hand, in situations where transfer to another federal jurisdiction is viable, the proper remedy is not dismissal of the complaint but rather a determination of whether transfer is proper by focusing instead on the requirements established in § 1404(a). Stewart Org., Inc. v. Richoh Corp., 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d (1988).

Pursuant to Stewart, regardless of how a defendant may phrase its request, the court must apply the § 1404(a) factors if the forum selection clause allows venue in another federal court. Under this approach, the court must consider issues of convenience and fairness in addition to the parties' choice of forum.

Bremen, on the other hand, mandates that the courts apply the parties' choice of forum provided it is reasonable. "[T]he forum clause should control absent a strong showing that it should be set aside." 407 U.S. at 12-13. "The prevailing view towards contractual forum-selection clause is that 'such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" Silva, 239 F.3d at 386 (citing Bremen, 407 U.S. 1, 10); In re Mercurio, 402 F.3d 62, 64 (1st Cir. 2005); Outek Caribbean Distrib., Inc. v. Echo, Inc., 206 F.Supp.2d 263, 267 (D.P.R. 2002).

The forum clause should be enforced "unless [the opposing party] could clearly show that enforcement would be unreasonable and unjust,

**CIVIL NO. 06-1567 (RLA)**                                                                    **Page 6**

---

or that the clause was invalid for such reasons as fraud or overreaching." <u>Bremen</u>, 407 U.S. at 15. Additionally, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id*.

Disregarding the parties' choice of forum is reserved for those extreme situations where the evidence shows that not only will it be "gravely difficult and inconvenient" to face trial thereat but also "that he will for all practical purposes be deprived of his day in court." <u>Bremen</u>, 407 U.S. at 17-18. See also, <u>Royal Bed and Spring Co., Inc. v. Famossul Industria e Comercio</u>, 906 F.2d 45, 49 (1st Cir. 1990) (inconvenience not enough; must deprive of day in court).

"There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power... should be given full effect." <u>Bremen</u>, 407 U.S. at 12-13. "Mere inequality of bargaining power between two sides will not be enough to render a contract unenforceable." <u>Outek</u>, 206 F.Supp.2d at 267. "A contract may be unenforceable due to unequal bargaining power if the party challenging the contract has been the victim of fraud or overreaching; if the party was coerced into signing; if it was denied the opportunity to seek legal advice prior to entering into the agreement; or if the contract is somehow unconscionable." *Id.* at 268.

**CIVIL NO. 06-1567 (RLA)** **Page 7**

The fact that another location would prove more convenient to the party resisting the agreed upon location is not sufficient to meet the "heavy burden" required to obviate a forum selection clause. <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

> Were it otherwise, forum selection clauses would almost never be enforceable, for inconvenience to at least one of the parties is an almost forgone conclusion when dealing with a provision that requires litigating away from one's home turf. Yet these clauses are standard fare in today's multi-jurisdictional and international contractual relationships. At the time these contracts are entered into, the parties routinely, voluntarily, and knowingly agree to litigate and/or be bound by the decision of fora located in distant locations. Thus, something considerably more than the mere inconvenience of traveling to litigate in a different, even faraway foreign jurisdiction, is required to overcome a contractual agreement to do so.

<u>In re Mercurio</u>, 402 F.3d at 66.

"While a plaintiff's choice of forum is ordinarily given deference by the court, this deference is inappropriate when the

**CIVIL NO. 06-1567 (RLA)** **Page 8**

parties have entered into a contract providing for a different forum." Outek, 206 F.Supp.2d at 266. The burden falls upon the party opposing the forum selection clause to show why it should not be enforced. Famossul, 906 F.3d at 49; Outek, 206 F.Supp.2d at 267.

### PLAINTIFF'S ARGUMENTS

ANTILLES does not contest that the controversies set forth in the complaint fall within the contracted choice of forum provision. Further, the clause is clearly written in mandatory terms. *See*, Silva, 239 F.3d at 388 (court to examine "whether language of the forum-selection clause is permissive or mandatory."). Additionally, there is nothing in the record suggesting that this condition was not freely negotiated between the parties. Plaintiff has not alleged that it was fraudulently induced into selecting a foreign country to resolve the contractual disputes.

Plaintiff argues that Puerto Rico public policy as set forth in Law 75 precludes enforcement of the choice of forum clause. The Dealer's Act specifically precludes agreements to litigate claims arising thereunder in jurisdictions outside of Puerto Rico. In pertinent part, Law 75 reads:

> Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto, or under foreign law or rule of law, shall be likewise considered as

**CIVIL NO. 06-1567 (RLA)** **Page 9**

>violating the public policy set forth by this chapter and is therefore null and void.

P.R. Laws Ann. tit. 10, § 278b-2.

Assuming Law 75 applies to the relationship between the parties to this case, the aforementioned policy has yielded to clauses covered by the Federal Arbitration Act,[5] 9 U.S.C. §§ 1-16, as well as those falling within the ambit of § 1404(a).[6] Additionally, cases decided under Bremen have similarly bypassed the Law 75 forum limitations while applying federal common law.

In Famossul, *supra*, the court upheld a contract clause selecting Brazil as the chosen forum in a breach of Law 75 case. In Stereo Gema, after careful analysis, the court found that it is federal common law which determines whether or not the choice of forum provision - in that case the local court in California - would be enforced. The court ruled that the provisions of § 278b-2 were not conclusive and the case was dismissed after considering the Bremen factors.

In support of its objection to the English courts, plaintiff cites its out of pocket expenses of over $800,000.00 from September through December 2005 caused by defendant's alleged breach which it claims have significantly impacted on its finances. ANTILLES argues

---

[5] Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626, 105 S.Ct. 2246, 87 L.Ed.2d 444 (1985); World Films v. Paramount Pictures Corp., 125 D.P.R. 352 (1990).

[6] Stewart.

**CIVIL NO. 06-1567 (RLA)**                                                         **Page 10**

that it "should not be forced to further tax its resources by litigating in another country... [when] all its evidence and witnesses [are] in Puerto Rico."[7] This situation, according to plaintiff, contrasts with that of AALBORG, a multinational entity which does not bear the burden of proof in this action and which has a geographical advantage over plaintiff.[8] According to ANTILLES, acquiescing to defendant's request would be tantamount to rewarding a party for its consistent breach of contract and aggravate plaintiff's economic situation.

As previously noted, plaintiff's burden for disregarding its contractual obligation is a heavy one reserved only for "gravely difficult and inconvenient" situations. The complications and expenses attendant to the prosecution of a claim in a distant forum are foreseeable at the time a party consents to the contractual provision. "The cost of such litigation alone cannot be enough to meet the 'heavy burden' imposed upon the reneging party, who may now have second thoughts." In re Mercurio, 402 F.3d at 66. There must be evidence explaining how these litigating expenses "were not foreseen by the contracting parties when they entered into the Agreement." *Id*. In this case, as pointed out by defendant, ANTILLES negotiated a total of three provisions agreeing to submit disputes in connection

---

[7] Opposition (docket No. 12) p. 11.

[8] AALBORG avers that its main offices, documentary evidence and witnesses are located either in Denmark or outside Puerto Rico.

with the contract in England - initially to arbitration and subsequently to the English courts.

The evidence presented in this case does not establish that ANTILLES would be effectively deprived of its day in court if forced to litigate its claims in England as it contracted to do with the defendant in the event of a conflict. Further, there is nothing in record indicative that plaintiff may not enjoy a fair trial in that jurisdiction.

Accordingly, we find that in this particular case plaintiff is required to abide by the terms of a contractual obligation it freely and voluntarily undertook and assume the foreseeable consequences of its decision.

## CONCLUSION

Based on the foregoing, defendant's Motion to Dismiss (docket No. **6**) is **GRANTED**[9] and the complaint filed in this case is hereby **DISMISSED WITHOUT PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 29th day of November, 2007.

                                              S/Raymond L. Acosta
                                              RAYMOND L. ACOSTA
                                    United States District Judge

---

[9] See, Opposition (docket No. **12**); Reply (docket No. **17**); Sur Reply (docket No. **21**); Motion Supplementing Record (docket No. **22**) and Response (docket No. **23**).